IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JEREMY JOEL OTERO MARRERO**<br><br>Plaintiff<br><br>V.<br><br>**CARIBBEAN RESTAURANTS, LLC; SALIDA 35 INC; TRIPLE S Propiedad, Inc.; A,B,C CORPORATION; X,Y,Z INSURANCE COMPANY; JOHN DOE; JANE DOE**<br><br>Defendants | CIVIL No. 21-1107<br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW, the Plaintiff, through the undersigned attorney, and before this Honorable Court respectfully alleges and prays:

### I. THE PARTIES

1. Plaintiff, Jeremy Joel Otero Marrero, ("Jeremy") is of legal age, single, United States citizen and domiciled in the State of Florida. Jeremy was born on March 13, 1999.

2. Caribbean Restaurants LLC, ("Caribbean Restaurants") by information and belief, is a Limited Liability Company organized in the State of Delaware, with principal offices located in Puerto Rico.

3. Caribbean restaurants is the owner of, master franchise holder, franchisee, and/or operator of two restaurants each

1

under the Burger King and Church Chicken franchise, located in Almirante Norte Ward, in the vicinity of exit 35, Highway # 22, Vega Baja, Puerto Rico on land and improvements leased from and belonging to Salida 35 Inc and/or another unknown defendant.

4. Salida 35 Inc., is a Puerto Rico corporation duly organized in accordance with the Laws of Puerto Rico, that is the owner of, land and improvements, and is the landlord for certain restaurants under the Burger King and Church Chicken brand, leased to co-defendant Caribbean Restaurants located in the vicinity of exit 35, Puerto Rico State Highway # 22, Vega Baja, Puerto Rico.

5. Co-Defendant, TRIPLE S PROPIEDAD, Inc. ("TRIPLE S"), by information and belief, is an insurance company organized and existing under the laws of the Commonwealth of Puerto Rico, having its principal place of business in the District of Puerto Rico.

6. At the time of the accident described in this complaint Triple S had in full force and effect, one or more insurance policies covering the legal liability of one or more of the named corporate defendants for the acts and omissions alleged herein.

7. Triple S assigned the investigation of the accident described in this complaint to one or more independent adjusters, to include Dynamic Adjustment Bureau, who assigned claim number SSS – 389-5, on or about July 19, 2017.

8. Upon information and belief, A,B, and C Corporations ("ABC") are other companies organized and existing under the Laws of Puerto Rico, having their principal place of business in Puerto Rico. At all relevant times herein, A,B, and C where the owners, operators, suppliers, maintenance providers, landlords, tenants, and/or lessors of the place where the accident describe in this complaint occurred.

9. Said unknow defendants, with the rest of the defendants, at the time and day of the accident were in charge or had control over the area of the premises or were responsible for maintenance of the grease trap and/or the sidewalk where the accident suffered by plaintiff occurred.

10. By information and belief, all defendants had control and were in charge of the maintenance of the sidewalk and surrounding areas to include the grease pit area next to the sidewalk and the sidewalk where the accident suffered by plaintiff and described in this complaint occurred.

11. Upon information and belief X,Y,Z Insurance Companies ("XYZ") are other unknown insurance companies, organized and existing under the laws of Puerto Rico, having their principal place of

business in Puerto Rico. Said insurance companies had in full force and effect one or more insurance policies covering the legal liability of one or more of the defendants for the acts and omissions alleged herein.

12. John Doe & Jane Doe are fictitious names given to natural persons that upon information and belief were the owners, persons in charge of or had control over the area of the premises or were responsible for maintenance of the grease trap and/or the north sidewalk where the accident suffered by plaintiff occurred.

## II. JURISDICTION

13. This Honorable Court has subject matter jurisdiction to entertain the instant case pursuant to *28 U.S.C. section 1332* over state law claims arising under *Articles 1802 and 1803 of the Puerto Rico Civil Code, Section 5141 et seq. of Title 31 of the Laws of Puerto Rico Annotated,* because this is a case or controversy between citizens of different states and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

## III. TOLLING OF THE STATUTE OF LIMITATIONS

14. The accident that gives origin to the present case occurred on May 23, 2017. At the time of the accident, Jeremy was a minor. Jeremy turned twenty-one (21) years of age on March 13, 2020. Pursuant to *Articles 1802* and *1803* of the Civil Code

of Puerto Rico, *31 L.P.R.A. section 5141 and 5142,* at the time of filling the present complaint, one year has not passed since plaintiff turned 21 years of age.

### IV. THE FACTS AND THE DAMAGES

15. On May 23, 2017, around 9PM, Jeremy was with friends leaving the Burger King business establishment located in Almirante Norte Ward, Vega Baja Puerto Rico next to exit 35.

16. Plaintiff was walking on the north sidewalk next to the Burger King and slipped and abruptly fell due to a slippery grease like substance that was covering a large part of the sidewalk and surrounding green areas, suffering life changing damages because of the fall, particularly to his right side of his body: right shoulder, back and right leg and to his abdominal area.

17. At the place of the accident, the area was very dark.

18. Friends that were with Jeremy, assisted him to recover and accompanied him to his home.

19. Jeremy, in the company of his mother, shortly after the accident visited a medical facility to seek emergency treatment and to evaluate the extent of the damages suffered.

20. Because of the pain that persisted, Jeremy and his mother visited other medical facilities and doctors and eventually underwent physical therapy.

21. The damages suffered by Jeremy are permanent.

22. Eventually Jeremy was diagnosed as suffering from diffused disk bulges with central protrusions, among other damages and damages to his abdominal area as a result of the fall.

23. The circumstances under which Plaintiff was injured were such that his injuries could not have occurred except because of Defendants' negligence.

24. The aforesaid accident resulted solely from the negligence and carelessness of Defendants, and in no manner whatsoever due to any act or failure to act on the part of Jeremy.

25. As a direct and proximate result of this accident, Jeremy suffered life changing damages.

26. Jeremy was a talented baseball player that had played outside of Puerto Rico and was being sought by baseball scouts for a sports scholarship and a future career as a professional baseball player. Jeremy was considered an outstanding pitcher before his accident.

27. As a result of the accident and because of the damages suffered and the persisting pain, Jeremy had to abandon his plans for a sports scholarship and a future career in baseball, thus changing his life prospects and economic outlook for ever.

28. Since the accident and because of the persisting pain, Plaintiff has been obligated to receive and undergo medical attention and care for his injuries, physical therapy and rehabilitation treatment, and to incur various expenses for said care.
29. As a further result of this accident, Plaintiff has been unable to attend fully to his daily chores, duties, and occupations.
30. Jeremy, because of his injuries and the associated pain, can no longer play baseball and had to abandon his aspirations of becoming a professional baseball player.
31. Because of the accident, Jeremy no longer enjoys various activities and pleasures of life that he carried out prior to the accident, to include those associated with baseball.
32. As a result of this accident, Plaintiff has suffered loss of earnings and the potential to generate income in his desired career.
33. As a further result of the accident, Jeremy has thus suffered severe physical pain, aches, mental anguish, and humiliation, inconveniences, impairment, and loss of enjoyment of life's pleasures and various daily activities.
34. The severe injuries, which are permanent in nature, changed forever Jeremy's aspiration for a career as a professional baseball player.
35. As a direct result of the accident, Plaintiff will continue to suffer of a significant permanent impairment that will affect

drastically his day-to-day life activities. The value of Plaintiff's past, present and future physical injuries and mental anguish is estimated in no less than **ONE MILLON TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($1,250,000.00).**

36. Present and future economic damages because of the accident are estimated in a sum of not less than **THREE MILLION DOLLARS ($3,000,000.00).**

37. As a result of the accident, Plaintiff will continue to incur unwanted expenses that are reasonably estimated in excess of **FIFTEEN THOUSAND DOLLARS ($15,000)**, an amount of money that is also owed to him.

## V. DEFENDANTS' LIABILITY

38. Plaintiff incorporates herein by reference all previous averments of the complaint.

39. At all times relevant hereto, Defendants owed a duty to repair, maintain, correct, inspect and otherwise be responsible for the aforesaid sidewalk and grease trap area close to the sidewalk.

40. All defendants had an obligation to ensure a safe and hazard free environment and otherwise be responsible to provide a safe and hazard free environment and otherwise be responsible for the care, custody, and/or control of the sidewalk and that

the same would be safe for transient public, including Plaintiff.

41. Defendants knew and/or should have known that not providing adequate maintenance and upkeep to the grease trap equipment could result in an overflow that would spill into the sidewalk and surrounding green areas and cause a hazard condition. Yet, they failed to act in providing proper maintenance and upkeep to the same to avoid spillage and overflow. The overflow of the grease trap had occurred before the accident.

42. The fall suffered by Jeremy was precisely caused by the grease like substance that emanated from the grease trap and for the lack of adequate lighting in the area that prevented Jeremy from noticing the slippery substance covering the sidewalk prior to his fall.

43. At all times material hereto, the sidewalk upon which Plaintiff was walking was under Defendants exclusive care, custody and control.

44. At all times material and relevant to this complaint, Defendants owned, leased, controlled, maintained, and/or had dominion of the north sidewalk, the surrounding land, and the grease trap located close to the side walk.

45. At all times material hereto, Defendants were responsible for providing adequate light facilities to the area. Yet, they failed to provide adequate lighting, thus contributing with

     their inaction to the occurrence of the accident. Plaintiff was not able to see the greasy substance on the sidewalk prior to the accident, since lighting was not adequate, thus being a contributing factor to the accident.

46. The negligence and carelessness of all Defendants in the care, custody, maintenance or control of the aforementioned sidewalk, surrounding areas and grease trap consisted of the following:

    a. failing to supervise, inspect, correct or have corrected, the grease trap next to the north sidewalk.
    b. Not monitoring or failing to monitor the grease trap and allowing the discharge of a greasy, slippery substance into the sidewalk which Defendants knew or should have known created a dangerous condition and hazard to the transient public that used the side walk, like Jeremy;
    c. failure to properly and adequately maintain the premises, in particular, the aforementioned grease trap and area of the sidewalk where Plaintiff fell;
    d. failure to warn the transient public and/or the general public of the dangerous, hazardous condition of greasy like substances in the sidewalk, since other incidents involving discharge had occurred prior to the accident;

e. failure to take reasonable precautions against the dangerous, hazardous and unsafe conditions on the sidewalk caused by the overflow of a greasy substance into the sidewalk and surrounding green areas;

f. failure to warn and/or to provide barricades in the area of the defective and/or dangerous condition to prohibit the transient public and/or members of the general public from traversing in the sidewalk when grease was present;

g. failure to properly and adequately hire and/or instruct their agents, servants, workmen, employees and/or representatives, of Defendants herein, as to safe and proper procedure for inspecting, maintaining, cleaning, correcting and repairing the grease trap to avoid spillage and the surrounding areas of the grease trap;

h. failure to act with due care and regard to the safety of others, in particular, Plaintiff;

i. failure to provide and maintain proper safety precautions and signs at said sidewalk;

j. failure *to* respond in a timely manner to an insecure or dangerous condition or situation upon said sidewalk;

k. failure to provide adequate light facilities in the sidewalk area.

47. Pursuant to Puerto Rico Law, Triple S Propiedad, A,B,C Corporations, X,Y,Z Insurance Companies, John Doe and/or Jane Doe, are jointly and severally liable for the damages claimed herein, with the rest of the defendants.

48. Plaintiff demands trial by jury.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment for plaintiffs, for the relief demanded in the complaint with the imposition of reasonable attorneys' fees and costs.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 5th day of March, 2021.

**JENKS CARBALLEIRA LAW OFFICE**
Attorney for Plaintiff
PMB 565
1353 Luís Vigoreaux Ave.
Guaynabo, PR 00966
Tel. (787)439-3980
**S/Eduardo R. Jenks**
Eduardo R. Jenks
USDC PR# 300110
Email: edjenks@yahoo.com